(No. 2939.  March 5, 1924.)

WRIGHT v. CLOSSON, Mayor, et al.

### SYLLABUS BY THE COURT.

1. Candidates for the office of alderman of a municipality should be voted upon throughout such municipality, and not in the respective wards of such candidates only.

2. In the absence of fraud, mere irregularities in the manner of conducting an election or of making the returns thereof will not destroy the effect of such election, especially where it is not pleaded nor proven that due to such irregularities that the result was changed or rendered uncertain, and persons elected thereat are de jure and not de facto officers.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action by E. R. Wright against Charles C. Closson, Mayor of the City of Santa Fe, and others, as members of the city council. From the judgment rendered, all parties appeal. Affirmed.

J. J. Kenney and E. P. Davies, both of Santa Fe, for appellants and cross-appellees.

J. O. Seth, of Santa Fe, for appellee and cross-appellant.

E. R. Wright, of Santa Fe, per se.

### OPINION OF THE COURT.

BRATTON, J.  The appellee and cross-appellant, E. R. Wright, will be hereinafter called plaintiff, and

the appellants and cross-appellees, Chas. C. Closson, mayor of the city of Santa Fe, and A. S. Alvord, R. L. Baca, Marcelino Ortiz, Telesforo Rivera, Pedro Roybal, E. L. Safford, Nicholas Sena, and John Shoemaker, members of the city council, will be referred to as the defendants.

On February 19, 1924, the defendants issued an election proclamation calling a general election to be held in said city on April 1, 1924, for the purpose of electing a mayor, treasurer, clerk, and five aldermen. This proclamation specifically provided that the mayor, treasurer, and clerk should be elected by the qualified electors of the city at large, and that the aldermen should be elected by the qualified electors of their respective wards. Thereupon the plaintiff, who is a citizen, qualified elector, and taxpayer in said city, instituted this suit upon behalf of himself and all others similarly situated to restrain the defendants from further proceeding with the election under the proclamation in question, and to command them, by mandatory writ of injunction, to issue another and different proclamation authorizing the election of the aldermen in question by the electors throughout the city at large. In addition, he pleaded that three members of the council, namely, Pedro Roybal, R. L. Baca, and John Shoemaker, were voted upon for aldermen of their respective wards at the election held in said city during April, 1922, by the electors of their respective wards only, and not by the qualified electors of the city at large, and are therefore merely de facto officers, and hence their successors should be duly, regularly, and legally elected at the approaching election in question by the qualified electors throughout the city. And he prayed that the mandatory writ sought should further command the defendants to proceed accordingly.

The defendants interposed a demurrer to the complaint which raised all of the questions of law involved upon this appeal. The trial court held that, under the provisions of existing law, members of

the city council of municipalities should be elected by the qualified electors throughout the city at large and, further, that the three members of the council who were elected during 1922 are de jure officers, and are therefore entitled to hold their respective offices until the end of their four-year term, which expires during the year 1926. Both parties elected to stand upon their pleadings, and a writ of injunction, partaking both of a restraining and mandatory character, was issued in accordance with these conclusions. From such disposition of the case, this appeal has been perfected. The defendants contend upon their direct appeal that the court erred in holding that members of the city council should be voted for and elected by the qualified electors throughout the city at large instead of from their respective wards, and the plaintiff contends upon his cross-appeal that the court erred in holding the three aldermen in question to be de jure officers. There are the two questions presented for our consideration.

[1] 1. We will first determine whether members of the city council of a municipality shall be voted upon and elected by the qualified electors of the city at large or by the qualified electors of their respective wards. This question necessitated an interpretation of section 3587, Code 1915; indeed, it turns upon such interpretation. This statute provides:

"The qualified electors of cities shall on the first Tuesday of April of each even numbered year elect one mayor, one clerk. and one treasurer, for the term of two years, and shall. elect one alderman from each ward, who shall hold their offices for the period of four years. The provisions, of this section shall apply to all cities in the state, whether incorporated under general or special. laws."

An historical review of the legislation leading up to the present statute may be quite profitable. The Territorial Assembly in 1884 enacted a very comprehensive act with reference to municipalities. This may be found at chapter 39, Laws of 1884. By section 76 thereof it was explicitly provided in clear and unmis-

takable language that aldermen should be elected by
the qualified electors of their respective wards. This
act is in this language:

"The qualified electors of each ward in cities shall an-
nually, on the first day of April, elect by a plurality of
votes, one alderman, who shall at the time be a resident
of the ward and a qualified elector therein. His term of
service shall be two years, and if any vacancy shall occur
in the office of alderman by death, resignation, removal, or
otherwise, the same shall be filed (filled) by election. The
qualified electors of each city shall also elect, by a plurality
of votes, a city treasurer, who shall hold his office for one
year, and shall have such powers and perform such duties
as are prescribed in this act, or by ordinance of the city
council not inconsistent therewith."  .

The language used is so clear that no room for de-
bate with regard to its provisions exists. By the very
clear and unambiguous language used, the qualified
electors of each ward elected, by a plurality vote,
one alderman. He was voted upon solely by the elec-
tors of his ward and not elsewhere in the municipality.
The law of the territory remained in that condition
until 1903, when the subject again came before the
Assembly for consideration. Chapter 9, Laws of 1903.
By the third section of this act it was provided that
on the first Tuesday in April, 1904, two aldermen
should be elected from each ward, one of whom should
be elected for a term of two years and the other for a
term of four years. This section provides:

"The qualified electors of cities shall on the first Tuesday
of April, 1904, elect one mayor, one clerk, and one treasurer,
for the term of two years, and two aldermen of the city
council from each ward, one of whom in each ward shall be
elected for the term of two years, and the other for the
term of four years, and shall elect two members of the board
of education from each ward, one of whom in each ward
shall be elected for the term of two years and the other for
four years."

Afterwards, and during the same session of the As-
sembly, it appeared that no provision had been made
for the election of aldermen after the year 1904, and,
in order to provide a continuing system, on a rotation
basis, section 3 of chapter 9, Laws of 1903, supra, was
amended by adding thereto the following language:

"And on the first Tuesday of April, 1906, and each two years thereafter, the qualified voters of cities shall elect one alderman and one member of the board of education from each ward, who shall hold their offices for the period of four years. The provisions of this act shall apply to all cities in the territory, whether incorporated under general or special laws." Laws 1903, c. 93.

And these two acts were combined and placed in the Code of 1915 as section 3587 thereof, after omitting the parts with reference to the elections to be held during the years 1904 and 1906. This was obviously done because those parts of the original acts had become obsolete or dead, those dates having passed long prior to the codification of 1915.

With this explanation of the history of the legislation up to the act in question, we are confronted with the effect of the change made by the Legislature in 1903 from the former law of 1884, as this becomes material as a legislative interpretation. That it was originally the law that such aldermen should be elected by the vote of the qualified electors of their respective wards is too plain for argument. Plainer language could not be found to express such a legislative intent than was used in the act of 1884. That the Legislature intended to make a change by the use of different language found in the act of 1903, now section 3587, Code 1915, must be presumed. The use of different phraseology, which is subject to a different interpretation, raises this presumption. It must be presumed that the Legislature intended to depart from the old law, which, in this instance, clearly and plainly required the election of aldermen by the qualified voters in their respective wards. If no change was intended or desired by the Legislature, why did it depart from the phraseology found in the former law which clearly provided for their election in such manner? A Legislature is presumed to know the language used in former legislation, as well as the construction placed thereon, and, when a subsequent act embodies different phraseology from that found in the former act, courts must presume that a de-

parture from the old law was intended. A change of language in a material respect is always held to show an intent on the part of the Legislature to change the meaning of the law. This is particularly true where the change in the form of expression is so marked as to indicate a desired change in the policy of the state. 2 Suth. Stat. Const. § 401, p. 777; 25 R. C. L. "Statutes," § 276, p. 1050; San Antonio & A. P. Ry. Co. v. Southwestern Tel. & Tel. Co., 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884; Halbert et al. v. San Saba Springs Land & Live Stock Association, 89 Tex. 230, 34 S. W. 639, 49 L. R. A. 193; Dillingham v. Spartanburg, 75 S. C. 549, 56 S. E. 381, 8 L. R. A. (N. S.) 412, 117 Am. St. Rep. 917, 9 Ann. Cas. 829; Dailey et al. v. Pugh et al. (Ind. App.) 131 N. E. 836. With this well-established rule of statutory construction in mind, as well as the historical review of the legislation just outlined, we must presume that the Legislature intended by the changed and new phraseology found in the act of 1903, now section 3587, Code 1915, to bring forward a new and different method of electing aldermen. What was this desired change from the old law which clearly provided for their election by the electors of their respective wards? By the use of this language:

"The qualified electors of cities shall on the first Tuesday of April of each even numbered year elect one mayor, one clerk, and one treasurer, for the term of two years, and shall elect one alderman from each ward, who shall hold their offices for the period of four years."

—it was clearly intended to change the method of electing such aldermen by providing that they should be elected by the qualified electors of cities at large instead of by wards. This is the only material change made in the method of their election, and the changed language can well mean nothing else. The statute seems clear, and its meaning is not difficult to ascertain. Had the Legislature intended to continue the law then in force, it would have done one of two things —either refrained from further legislating upon the subject, or brought forward the same language in

the new law. Instead, it inaugurated a new and different policy altogether. The statute, as it now exists does not even intimate that such aldermen shall be elected by the voters of their respective wards. It plainly says that qualified electors of the city shall elect them, and no limitation is to be found restricting this to wards.

Having determined that this was the legislative intent in making the change in question, we must be guided thereby, because such intent is the primary rule of construction, and, when once determined, is controlling. 25 R. C. L. "Statutes," § 216, p. 960, and the many cases there cited.

We, therefore, conclude that members of a city council should be elected by the qualified electors throughout the municipality at large, and not from their respective wards only, and the lower court so held.

[2] 2. We turn now to the contention made by the plaintiff upon his cross-appeal that Aldermen Pedro Roybal, John Shoemaker, and R. L. Baca were voted upon for their respective positions at the election held in April, 1922, by the voters of their respective wards only, and not by the vote cast throughout the city at large, and for such reason they are only de facto officers, and hence their successors should be elected at the election to be held in April of this year. From what we have said, it is apparent that this was irregular, as they should have been voted upon by the entire electorate of the city, and the effect of this irregularity is the question we must now decide.

It is not charged that this irregularity was brought about by fraud, nor that it was willfully or wrongfully done for any ulterior motive. It is admitted that the call for the election or the election proclamation was in the terms and language of the statute, and that thus confining the election was due to common consent or ignorance of law. Neither is any contention

made that any number of voters were deprived of their right to vote, nor that the result of the election would have been changed had the statute been followed; and, finally, it is admitted that such persons received the highest number of ballots cast at such election for such officers, even though all of them were cast in their respective wards. This is but an irregularity in the conduct of the election. Any qualified voter had the right to prepare his own ballot. The form prepared for the use of such voters was for their convenience only. No statute has been called to our attention, and we have been unable to find one, making or prescribing any form of ballot in such elections to be official to the exclusion of others. So, no person was deprived of his right to cast a ballot for or against such officers by reason of the fact that their names were not printed upon the ballots used at polling places other than in their respective wards. The object and purpose of an election is to obtain the will of the public upon a given issue or the selection of officers, and when the voice of the majority of those participating has been obtained the election will not be disturbed by reason of technical irregularities in the manner of conducting it or of making the returns thereof, especially in the absence of pleading and proof that the result was thereby changed or at least made uncertain. Carabajal v. Lucero, 22 N. M. 30, 158 Pac. 1088; Montoya v. Ortiz, 24 N. M. 616, 175 Pac. 335; Gallegos v. Miera, 28 N. M. 565, 216 Pac. 502. No such contention is made here. We, therefore, think the three aldermen mentioned are de jure officers, and that the trial court was correct in its conclusion upon this phase of the case.

The case having been correctly decided below, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.