246 P.2d 201

**WALKER v. MECHEM, Governor et al.**

**No. 5540.**

Supreme Court of New Mexico.

July 9, 1952.

Shipley & Shipley, Alamogordo, for relator.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Frank B. Zinn, Ass't Atty. Gen., for respondents.

ROGERS, District Judge.

This is a mandamus proceeding instituted in this Court on the petition of the relator, Allan D. Walker, against the respondents as Governor, Chief Justice of the Supreme Court, and Secretary of State, respectively, of the State of New Mexico, comprising the State Canvassing Board of the State of New Mexico, for the purpose of requiring them to cancel the Certificate of Nomination heretofore issued to T. K. Campbell, and to issue in lieu thereof a new Certificate of Nomination to the petitioner for the office of District Attorney of the Third Judicial District of the State of New Mexico, comprising the Counties of Dona Ana, Otero and Lincoln.

An Alternative Writ of Mandamus was issued, directed to respondents, and prior to the return date thereof, T. K. Campbell was allowed to appear in his own behalf as an Interested Party. The respondents and the Interested Party filed responses to the Writ, as well as briefs, and on the return date, extended arguments were heard.

. The facts, as gleaned from the Alternative Writ, a...d responses thereto, are that the relator, T. K. Campbell and E. E. Chavez are all members of the Democratic Party, and duly registered in the registration books of their respective Counties in the Third Judicial District, and that each of them filed declarations of candidacy for the nomination of the Democratic Party for the office of District Attorney of the Third Judicial District, and that proper petitions of qualified electors of sufficient number to have the name of each placed on the ballot for the Primary Election to be held on May 6, 1952, were duly filed, as provided by the State Primary Law. The names of these three candidates were duly

placed upon the ballot, and each of the Counties comprising the District, and after the Primary Election was held, the various Canvassing Boards of the Counties in the District made a canvas of the returns, and sent them to the Secretary of State in Santa Fe. The respondents, as the State Canvassing Board, duly canvassed the various certificates from the Counties of Dona Ana, Otero and Lincoln, and determined that in the District Attorney's race on the Democratic Party for the Third Judicial District, that Campbell had received 2,136 votes; and that Allan D. Walker had received 2,129 votes, and that a lesser number had been cast for Chavez. Accordingly, respondents, on May 21, 1952, issued a Certificate of Nomination in favor of Campbell.

The relator, Walker, within the time provided in our Statutes, filed with the County Clerk of Dona Ana County, a petition for a recount of ballots in certain voting divisions, including Precinct Number 17, Anapra, in Dona Ana County. In due time, and on June 3, 1952, the Board of County Commissioners of Dona Ana County, acting in their capacity as a County Canvassing Board, opened the ballot boxes of the precincts specified in relator's petition, and recounted and retallied and recertified the results of the Primary in all the Precincts, with the exception of Precinct 17. It appears that upon opening the box of that Precinct, no ballots appeared

therein. It is generally understood that the Election Officials burned all of the ballots, both used and unused, which were furnished them for the election, doing so under a mistake as to the election laws. At any rate, the record is devoid of any evidence of fraud on the part of the Election Officials charged with the conduct of the Primary Election in Precinct 17.

The Count, as reflected on the tally book executed by the Election Officials following a count of the votes, showed that in this Precinct, Chavez received 24 votes, Walker 1, and Campbell 21. If the tally of counts in this Precinct be disregarded, the relator Walker is entitled to the Certificate of Nomination. If it be included with the votes of all of the other voting divisions of the District, Campbell is entitled to a Certificate. We are thus confronted with the question as to whether the State Canvassing Board acted properly in including in the votes cast, those appearing as tallied on the tally books of the Precinct.

The relator relies solely upon a literal interpretation of a portion of Section 56–826, N.M.S.A., 1941, which provides, in part, as follows:

"In the event of a recount of ballots cast for any office other than a county or precinct office, the said board of county commissioners, acting as a canvassing board, shall certify the number of ballots cast for each candi-

date whose office is so recounted in said county as shown by the said recount to the state canvassing board, and the state canvassing board shall be bound thereby. This provision shall be mandatory, and may be enforced by mandamus.

"It shall be the duty of the state canvassing board to issue its certificate of nomination as to all offices other than county or precinct offices in accordance with the result of said recount".

Relator earnestly contends that the above statute requires the county commissioners to certify the number of ballots for each candidate, as shown by the said recount. Relator then concludes that in the event the ballots are not available and cannot be recounted, the results of the particular voting division shall be ignored, even though a certificate in the tally book executed by the Election Officials indicates that votes were cast, counted and tallied in due course at the voting place at the Primary Election.

The Election Laws of New Mexico are silent as to the procedure to be followed in a recount proceeding when the ballots are not available for a recount, but there is in existence a tally certificate in the tally book, executed by the Election Officials. This is a case of first impression in the Courts of New Mexico, on this precise point, but we feel that this Court has previously spoken on kindred matters with such force and clarity as to furnish an answer to the instant problem. In addition, cases closely akin to the one at bar have received the attention of the Supreme Courts of two jurisdictions, and the results announced are in accordance with our views.

The Supreme Court of New Mexico in Madrid v. Sandoval, 36 N.M. 274, 13 P. 2d 877, held that a statutory recount is merely a resort to the ballots, themselves, as the primary and best evidence of the result of the election. It is further stated in that opinion, however, that the Certificate of Election, based on the original count, is prima facie correct. A somewhat similar case appears in Valdez v. Herrera, 48 N.M. 45, 145 P.2d 864, 866, decided in 1944. In that case the Election Officials failed to deliver to the County Clerk's office within the 24 hour period specified in the statute, the ballot boxes, poll books, tally books and other documents, and in an election contest proceeding in the District Court, the returns from such precincts were rejected on the ground that the statutory requirement had not been met. On appeal the Supreme Court, speaking through Mr. Justice Mabry, stated as follows:

"We thus approach the question as one of law simply. We are called upon to appraise the statute which contestee would strictly, and we must say,

somewhat technically, construe, and as to which contestant would ask for a liberal construction in order that some 450 voters, as he contends, may not be disfranchised because of an honest misunderstanding on the part of the precinct election officials as to the requirements of the statute. * * *

"Even though we should say that this provision of the statute is mandatory, as we assumed, if we did not decide, in Board of County Com'rs of Torrance County v. Chavez, 41 N.M. 300, 67 P.2d 1007, yet there is also a constitutional mandate to which we must yield, that one which says that the person receiving the highest number of votes shall be elected to office; as well as the often announced principle that voters will not be denied their rightful voice in government absent a certain and controlling conflict with a more compelling consideration, that of the public interest to be served in the preservation of the validity of elections. * * *

"We must thus appraise mandate as against mandate, if there be a conflict. Certainly, the more controlling one is that the voter shall, ordinarily, have his vote recognized and the candidate be given the office to which he is elected if the votes are cast and returned under such circumstances that it can be said it represents the voice of the majority of the voters participating. And 'the election will not be disturbed by reason of technical irregularities in the manner of conducting it or of making the returns thereof * *'."

For decisions further amplifying the rules above stated, see Carabajal v. Lucero, 22 N.M. 30, 158 P. 1088; Gallegos v. Miera, 28 N.M. 565, 566, 215 P. 968; Wright v. Closson, 29 N.M. 546, 224 P. 483; Reese v. Dempsey, 48 N.M. 485, 153 P.2d 127; and Trujillo v. Suazo, 48 N.M. 57, 145 P.2d 871.

As above stated, similar cases have arisen from two other jurisdictions. These are the states of Kentucky and Massachusetts. A thorough study of the statutes of each of these states reveals that in recount proceedings, the ballots, themselves, are to be recounted, retallied and recertified by public officials. The Kentucky statute is Section 1550–28 of Carroll's Kentucky Statutes Annotated, Baldwin's 1936 Revision; and the Massachusetts statute is Section 135, c. 54, Tercentenary Edition of the General Laws of the Commonwealth of Massachusetts; both statutes being quite similar to Section 56–826, supra, of our state, Decisions based thereon, are of utmost value to us in a decision of this case.

In Frazier v. Wright, 312 Ky. 523, 228 S.W.2d 424, the election commissioners had found that Frazier received 5,038 votes and Wright 4,979 votes, for the office of County Clerk of Letcher County, Kentucky, a majority of 59 votes for Frazier. Recount

showed Frazier had 4,960 and Wright had 5,002 votes, a majority of 42 votes for Wright. Frazier appeals and insists that on this trial the internal evidence proved the ballot boxes had been invaded and the integrity of the ballots destroyed, hence the Court should have accepted as correct the finding of the Board of Commissioners and awarded him the office.

After ballots in a number of the boxes had been counted, it was discovered that there were no county election ballots in the box of the West Jenkins Precinct No. 26. It contained only ballots in city and school board elections. The Court continued re-count over Frazier's objection in expectation that the missing ballots would be found in other boxes. But they were never found. The election commissions testified that all the ballots were put back in that box after having been counted and that it was locked. There was no contradiction. Thus, it was shown that some culprit or culprits had entered the box and stolen these ballots. The election commissioners' certificate of 151 votes for Frazier and 131 for Wright was accepted by the Court and regarded in the tabulation of the whole.

The Court of Appeals of the State of Kentucky, in affirming the Circuit Court, held:

"1. Where it is found that ballots in one or two boxes have been tampered with, and integrity of others maintained, rather than disfranchise the electorate, the court should reject tampered ballots or empty box and accept as best evidence of people's will, returns certified by election officers if it is not proved they have failed in their duty or that their certificate is erroneous.

"2. In the election re-count proceeding, evidence sustained trial court's finding that integrity of ballots cast was sufficiently preserved to justify acceptance of result of re-count in all ballot boxes except those from which ballots had been stolen and regarding as correct returns certified by Board of Election Commissioners from such precinct."

Rehearing was denied.

We can see no appreciable difference between a case where the ballots were stolen by culprits, and the certificate was accepted, as occurred in the Kentucky case, and a case where ballots were erroneously destroyed, yet the totals thereof were perpetuated by the tally certificate, as in the case at bar, remembering, at all times, that there is no showing of fraud on the part of the election officials in Dona Ana County's Precinct 17.

The Massachusetts case is Swift v. Board of Registrars of Voters of Milton, 281 Mass. 264, 183 N.E. 727, 729, decided by the Supreme Judicial Court of Massachusetts in 1932. This was an action in mandamus

by a candidate for the office of Lieutenant Governor, at the State election held November 8, 1932. The respondents were the Board of Registrars of the voters of the Town of Milton. The returns of the various precincts in the Town of Milton showed a total vote of 8,727, of which 3,106 were cast in Precinct 2. A petition for recount of the votes cast for Lieutenant Governor was seasonably filed, and a recount was had.

At the time set for the recount, the Town Clerk delivered to the Board of Registrars of Voters, the used ballots in his possession on that day, for the purpose of the recount. He was unable to hand to them 1,506 of the ballots cast for the reason that through accident, those ballots had been placed in cartons containing unused ballots, and all were burned. It appeared that all of the election clerks acted in good faith, and that the destruction of the 1,506 ballots was by accident.

After stating that proceedings for a recount of votes cast at an election are strictly statutory, and that the main purpose of the election statutes is to provide a convenient method for a qualified voter to express in secret his preference for persons to be elected to office, the Supreme Court of Massachusetts stated as follows:

" * * * The record in the case at bar discloses nothing irregular in connection with the election. The ballots were lawfully cast and counted and re-turned, and the results declared with all the safeguards required by the law and under all its presumptions as to correctness. Thereafter but before the petition for recount was filed, some of the ballots thus cast were innocently destroyed by accident and mistake. No fraud is disclosed. No intent on the part of anybody to interfere with a recount or to affect the operation and result of the election is revealed. To hold that these entirely guiltless acts invalidate the votes of precinct 2 would have the effect of disfranchising at least fifteen hundred and six voters or, according to other suggestions made in argument, all the voters of that precinct or of the entire town. Such a result would be unnatural. It would violate fundamental conceptions as to the operation of democratic institutions and the safety of our form of government.

"The statutes do not require any conclusion of that nature. The right to a recount is secured to specified number of voters under G.L.(Ter.Ed.) c. 54, § 135. That right must be given all the protection accorded to it by the General Court. But it does not mount higher than the election itself. It arises subsequently to the election. It has no essential connection with the election. The statutes cannot be rightly interpreted to accomplish the disfranchise-

ment of hundreds and perhaps thousands of voters who have complied with every provision of the law, who are entitled to have force and effect given to their votes and whose votes have been once counted and returned under all the sanctions provided by the election law. An innocent although unfortunate accident and mistake has intervened to prevent the recount of all the votes in precinct 2 of Milton as required by law. The statute contains no express provision concerning such a situation. The general principle of the law of elections is against disfranchisement of the voter who has complied with the statute in these circumstances. Every intendment of the law is to give effect to the expression of the will of the voters, notwithstanding incidental irregularities in the election, unless they are of such nature as to render doubtful the true interpretation of that expression * * *. To press the right to a recount established by said section 135 to the · technical extreme here urged would violate underlying ideas concerning free institutions. It is not required or permitted by a reasonable construction of the election statutes as a whole. The design of the recount is to verify, not to destroy, the result of an election as previously declared by the election officers. Where without culpability verification has become impossible as to any part of an election that part of the election does not become a nullity.

"The original count of the votes in the town of Milton as returned by the precinct officers and corrected will stand as true".

We conclude that until our Legislature otherwise speaks, and in cases untinged by fraud, an authentic certificate of the tally of votes cast in a voting division, may be considered in a recount when the ballots cast at an election are not available at the time of the recount.

We desire to state that it is by no means certain that the relator did not lose the right to the relief in mandamus which he seeks herein, in failing to move by contest to raise the question immediately upon learning of it, and while time yet remained so to do. However, being well satisfied, as we are, that the precedents above-mentioned support the decision which we have announced, we need not search for, nor seek additional grounds of support. Accordingly, the Alternative Writ of Mandamus will be discharged, And It Is So Ordered.

SADLER, McGHEE and COMPTON, JJ., concur.

CARMODY, District Judge, dissents.

CARMODY, District Judge (dissenting).

My disagreement is not so much with the rule of law as announced by the majority,

as the fact that the holding of the majority is based on something more than the record itself. The majority speaks of the ballots being "erroneously destroyed" and also "it is generally understood that the Election Officials burned all the ballots, both used and unused," whereas, a minute and very careful examination of the record fails to disclose any information whatsoever as to what happened to the ballots of Precinct No. 17, if there ever were any. From the record, the only material facts that we can gleam as to the missing ballots, are that there could be no recount in Precinct No. 17 as there were no ballots found therein, and that, according to the certificate of the County Commissioners, there was no material evidence of fraud on the part of the election officials of Precinct No. 17.

In both the Kentucky and Massachusetts cases, cited by the majority, there were in the record, circumstances as to what occurred with reference to the missing ballots, but here, unless the Court is to consider newspaper accounts and statements of counsel, neither of which are evidence, the circumstances with reference to the unavailability of the ballots are a blank page.

The effect of the majority opinion is to place in the Board of County Commissioners, sitting as a Canvassing Board, and also in the State Canvassing Board, the full and complete right and authority to determine whether fraud existed in a case where the ballots are not found in a recount proceeding. Is this the way that the Legislature intended our election laws to be carried out, or did the Legislature intend that a recount proceeding is just exactly what it stated it was, and that is, to recount the ballots that are in the boxes? In my opinion, the granting of such power to the Canvassing Boards, of determining whether fraud exists, or, on the other hand, that there was good faith on the part of the election officials, not only opens the door, but actually invites fraud and fraudulent practices. In the present case, it cannot even be determined, from the record, that the precinct officials were called in to explain the whereabouts of the official ballots.

Admittedly, a contest is expensive, and the burden would be shifted from the relator, but at least in a contest the question of good faith or fraud on the part of the election officials, can be gone into and made a matter of record in a Court of law, not before some administrative group, such as a Canvassing Board. A contest is certainly the proper means, under existing statutes, to determine a matter such as we have before us. Although I do not mean to say that in a mandamus proceeding such as this, if the material facts were made a part of the record, that the majority opinion would not be absolutely right.

The duty is on the Courts, particularly under our decisions, to see that the voters are not disenfranchised, but I have no way

of determining, in this case, whether any voters might be disenfranchised, whether any voters actually voted in Precinct No. 17, or, if they voted, whether a correct tally of their votes was made. Therefore, having no information from the record, I feel that the statute should be strictly complied with, and that the alternative writ should be made permanent.

For the above reasons, I dissent.