262 P.2d 985

**TELLES v. CARTER.**
No. 5687.

Supreme Court of New Mexico.
Nov. 3, 1953.

Shipley & Shipley, George A. Shipley, Alamogordo, for appellant.

David Chavez, Jr., Samuel Z. Montoya, Santa Fe, for appellee.

SEYMOUR, Justice.

This contest results from a city election held January 12, 1953 in Alamogordo, New Mexico, for the office of City Commissioner for District No. 2. Twenty-seven ballots, counted and canvassed for appellant-contestee Carter, were marked by placing a check mark, i. e. (√) inside the square opposite that candidate's name. The election laws of New Mexico specify that a cross be used in marking ballots and define that cross as follows:

" * * * The cross used in marking ballots shall be two (2) lines intersecting at any angle within the circle or square, and either or both lines may extend outside the circle or square. * * * " Sec. 56–313, 1941 Comp.

If the ballots marked with a check are counted, appellant-contestee wins the office; if such ballots are rejected, appellee-contestant is the successful candidate.

There are two questions for decision; the first is: Are the general election provisions of the election code with respect to the manner of marking ballots applicable to elections of municipal officers? A reading of Secs. 14–1303 and 56–720, 1941 Comp. satisfies this Court that the general election code does so apply.

The second question is a serious one. It is underscored in importance by the admission of parties that there is no question of fraud; and that the ballots marked with a check do represent, without any uncertainty, the actual preference of the individual voters for the particular candidate. In short, several citizens, eligible to vote, have expressed their choice at the polls; no one questions their right or their intention. Are they to be deprived of the very fundamental privilege of voting because they have used a check mark rather than a cross?

In answering this question, there are involved two clearly defined theories, leading to opposite conclusions, both clothed with powerful arguments asserting the interest of public policy. The first theory is that of "intention." The basic idea here is that the right to vote is so sacred that, if the intention of the voter can be ascertained

clearly, the vote shall be counted. The second theory is based upon the necessity of insuring the spirit of the Australian ballot system, with its emphasis upon secrecy of the ballot, in order to preserve to the best of our ability the purity of the ballot.

In choosing between these theories for the purpose of deciding the particular factual problem here presented, this Court, by so doing, does not intend to minimize or exaggerate the importance to be attached to either of these concepts.

The relevant portions of the statutes most heavily involved are:

*Sec. 56-313, 1941 Comp.*

"Manner of voting—Right to challenge voter—Poll book entries—Assistance affidavit—Marking ballots—Folding—Delivery to judge—Deposit—Entry of ballot number on affidavit of registration.—

\*    \*    \*    \*    \*  .    \*

"On ballots designated for voting on any proposed constitutional amendment or other question, the elector shall mark a cross in the square for or against the proposed amendment or other question as the case may be. The cross used in marking ballots shall be two (2) lines intersecting at any angle within the circle or square, and either or both lines may extend outside the circle or square. \*    \*    \*"

*Sec. 56-312, 1941 Comp.*

"Instructions to voters.—

\*    \*    \*    \*    \*    \*

"2. You can vote only by making a cross with pen and ink or indelible pencil on the ballot in a circle or in a circle and in one or more squares. Such cross shall consist of two lines intersecting within the circle or in the square."

*Sec. 56-501, 1941 Comp.*

"General.—\*    \*    \*    No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him.  \*    \*    \*"

The legal issue as discussed by the courts is stated in this way: Is the provision of an election code requiring the voter to mark his ballot by a cross mandatory, or directory only?

This Court has not passed upon the particular question. The specific factual question has been before the Courts of other states many times, but never with our exact statutes for interpretation. The weight of authority favors a mandatory interpretation of such a provision. Many of the Courts so holding are impelled to that conclusion by a specific statutory provision that a ballot not marked in accordance with the statute shall not be counted. Appeal of Gallagher (Bauman Election Contest Case), 1945, 351 Pa. 451, 41 A.2d 630. The case of Peterson v. Billings, 1939, 109 Mont. 390, 96 P.2d 922, arriving at the con-

trary conclusion, summarizes briefly some of the jurisdictions controlled by such mandatory statutes, namely, Utah, California, Iowa and New York. New Mexico has no statute specifically stating that such a ballot shall not be counted.

There are a number of states construing statutory provisions similar to ours requiring the marking of ballots with a cross which, like New Mexico, have no additional statutes specifically stating that ballots otherwise marked shall not be counted. Among these states are Indiana, Arizona, Illinois, Maine and Mississippi. See Boland v. City of La Salle, 1939, 370 Ill. 387, 19 N.E.2d 177; Hunt v. Campbell, 1917, 19 Ariz. 254, 169 P. 596; Frothingham v. Woodside, 1923, 122 Me. 525, 120 A. 906; Bartlett v. McIntire, 1911, 108 Me. 161, 79 A. 525. Many cases are cited in the annotation 47 L.R.A. 806.

The foregoing citations are far from exhaustive. They are given simply to indicate the trends of authority. A similar conclusion has been reached in numerous other states. By reason of the fact that the question is always one of considerable public interest, the opinions of the Courts tend toward great length and long discussion of the principles involved. Little can be accomplished here by citing and discussing all of these cases. Perhaps the best statements of the opposing views appear in Hunt v. Campbell, supra, and Peterson v. Billings, supra.

The minority view as expressed in Peterson v. Billings, supra, is persuasive. However, it must be noted that in Montana there is a specific statute, Rev.Codes 1935, sec. 777, reading in part as follows:

"* * * any ballot * * * from which it is impossible to determine the elector's choice is void and must not be counted; if part of a ballot is sufficiently plain to gather therefrom the elector's intention, it is the duty of the judges of election to count such part."

In short, Montana seems to have a legislative declaration that the theory of intention is dominant. There are a few other cases holding that a check mark on the ballot, so long as there is no fraud and the intention of the voter is clear, should be counted. Usually, one also finds some statutory underwriting of the "intention" theory. There are also certain decisions which seem to vary the application of the legal principles upon the basis of whether or not a specific mark substantially complies with the mandatory requirement of a cross. These cases are not too helpful. The conclusion to be reached from a review of the authorities is that the vast majority of courts faced with the problem have decided that such a statutory provision as we have in our own election code is mandatory. In this connection, see McCrary on Elections, 4th Ed., sec. 720, pp. 519, 520:

"Sec. 720. The provisions of the law defining the manner in which the voter

shall mark his ballot are generally held to be mandatory. To permit the ballot to be marked in a different manner from that prescribed would be to enable the voter to place a distinguishing mark upon his ballot, thereby depriving it of its secrecy, and frustrating the chief object sought to be obtained by the system.

"Most of the decisions holding that this rule should be relaxed sufficiently to determine the intention of an innocent voter are based upon statutes containing peculiar or indefinite provisions. Thus, under the section of the Nebraska statute that 'when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part,' it has been held that a ballot which the statute requires should be marked with ink should not be rejected because marked with a lead pencil. Likewise under the statute of Minnesota, which does not prescribe any inflexible rule as to what shall, or shall not, be accepted as a cross-mark, it has been held that 'any mark, however crude and imperfect in form, if it is apparent that it was honestly intended as a cross-mark, and for nothing else, must be given effect as such.' It may be concluded that while there is some authority to the contrary, the great weight of authority in this country is in favor of holding such provisions mandatory."

Turning to the New Mexico Statutes, we find in favor of the mandatory construction of this provision the use of the word "shall," normally a mandatory word. At the same time, in favor of the directory construction of the statute, we find many sections of the election code, in contrast to the one under consideration, coupled with specific language determining their mandatory character. In this regard see Sec. 56–245, Sec. 56–246, Sec. 56–305 and portions of Sec. 56–313, 1941 Comp. For example, that portion of Sec. 56–313, supra, directing voters how to vote when there are two or more candidates nominated in a group for an office, concludes that in case of a violation " * * * his ballot shall not be counted for any candidate for said office." It would seem, therefore, there are substantial arguments on both sides of this question stemming from the specific language of the election code.

While this Court has not passed upon the exact question, it has passed upon related questions. It is the position of appellant-contestee that Bryan v. Barnett, 1930, 35 N.M. 207, 292 P. 611, 612, is controlling. That case dealt with ballots cast under an absentee voting statute (subsequently declared unconstitutional) ; the statute provided, "Any registered elector who expects to be absent * * * may cause to be mailed or presented to the county clerk an

application *signed by him* for an official ballot to be voted in said election." 1929 Comp. § 41–333. The applications were signed by a person other than the elector. The ballots, of course, were marked by the actual electors and there was no question of fraud. Justice Watson held that the provision for the signing of the application was directory and that the ballots should be counted. In so holding, the Court made this general statement in support of the intention theory and briefly commented on the cases cited:

"As a basic proposition the law favors the right to vote and seeks to give effect to the expressed will of the electorate. It upholds the validity of votes cast and of elections held, without fraud, though irregular. Esquibel v. Chaves, supra [12 N.M. 482, 78 P. 505]; Carabajal v. Lucero, 22 N.M. 30, 158 P. 1088, 1090; Montoya v. Ortiz, 24 N.M. 616, 175 P. 335; State ex rel. Read v. Crist, 25 N.M. 175, 179 P. 629, 630; State ex rel. Walker v. Bridges, 27 N.M. 169, 199 P. 370; Gallegos v. Miera, 28 N.M. 565, 215 P. 968, 990; Wright v. Closson, 29 N.M. 546, 224 P. 483."

While this language favors appellant-contestee, a reading of the many cases which hold that a provision for marking the ballot with a cross is mandatory, discloses that all Courts in their opinions use language emphasizing the great distaste which accompanies any decision resulting in the disenfranchisement of voters. As heretofore stated, such decisions do not minimize the importance of protecting the right to vote; they only determine that such right is sufficiently important to justify, on occasion, the rejection of an honest vote for the ultimate security of the ballot for all.

█ These same cases cited by Justice Watson, and particularly Esquibel v. Chaves, 1904, 12 N.M. 482, 78 P. 505, and State ex rel. Read v. Crist, 1919, 25 N.M. 175, 179 P. 629, arrive at a rough but generally accepted rule of construction to be applied in such cases. The rule is stated by McCrary on Elections, 4th Ed., sec. 724, p. 522:

"Sec. 724. The decisions cited in the preceding sections upon the question whether the provisions of the law are mandatory or directory are not entirely harmonious. They, however, disclose a well-defined disposition on the part of the courts to distinguish between acts to be performed by the voters, and those devolving upon the public officials charged with the conduct of the election. The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform

their duties according to the letter of the statute where such failure has not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure so to do."

After much thought, it is our conclusion that this rule is sound. Appellant-contestee contends that the holding of Bryan v. Barnett, supra, is in direct conflict with this concept. We do not think so. It is scarcely profitable here to argue that question; suffice to say that Justice Watson did not feel that this rule was sufficiently involved to merit discussion in the disposition of that case. It is also true that, in cases involving such fundamental problems as the right to vote and the preservation of that right for all, each case must be weighed very closely on its own specific facts and on the specific sections of the applicable statutes.

Finally, we can see no end to the problems that would be raised by an opposite conclusion. If a check mark is sufficient, why not any other mark which appeals to the individual voter. Those burdened with the task of tallying ballots would be faced, as each vote was counted, with a judicial as well as a mathematical problem. In addition, such a decision would destroy one section of our election law which is vital to the protection of the ballot, namely, Sec. 56-501, supra, enacted for the purpose of eliminating from the ballot any distinguishing marks through which the secrecy of the ballot would be lost.

The judgment of the trial court is affirmed.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON and LUJAN, JJ., concur.