286 P.2d 317

**P. F. TURNER, Contestant-Appellee,**

v.

**D. B. JUDAH, Jr., Contestee-Appellant.**

**No. 5926.**

Supreme Court of New Mexico.
June 30, 1955.

Rehearing Denied Aug. 4, 1955.

Morgan & Morgan, Portales, Smith & Smith, Clovis, for appellant.

Reese, McCormick, Lusk & Paine, George L. Reese, Jr., Carlsbad, Hartley & Buzzard, Clovis, for appellee.

LUJAN, Justice.

P. F. Turner, contestant-appellee, and D. B. Judah, Jr., contestee-appellant were rival candidates for the office of sheriff of Roosevelt County. Appellee was the only nominee of the Democratic Party. He received his nomination in the regular primary election. Appellant was not nominated by the Democratic party nor by petitioners under § 3–11–7 of the 1953 Compilation and his name was not printed upon the ballots as a candidate. He depended upon the voters who desired to support him, to write his name in the blank line left upon the official ballot for that purpose and a cross in the square after his name. The county canvassing board certified that appellant had been elected by receiving a majority of the votes cast, and awarded him the certificate of election. Appellee in due time instituted an action against appellant, contesting his election. The district court resolved the issues in favor of appellee and appellant prosecutes this appeal.

Where a voter desires to cast a vote for a person whose name is not printed upon the ballot, the Legislature has prescribed a specific way in which he shall do so. § 3-3-6 of 1953 Compilation so far as pertinent to the question under discussion, provides as follows:

"* * *; but nothing herein shall prevent any voter from writing on his ballot the *name* of any person for whom he desires to vote for any office in the manner hereinafter provided, and such *vote shall be counted the same* as if such *name* were printed on the ballot. If any error occurs in the *printing* on the ballot of the *name* of any candidate or in the designation of the office for which he is *nominated* the ballot shall nevertheless be counted for such candidate for the office for which he was *nominated* as shown by the certificate of nomination filed as provided in this act.

"Names of the candidates shall be connected with the squares by leaders, and next below the names of candidates for any office there shall be one (1) blank line with a similar square and leader to the right thereof." (Emphasis ours.)

■ These requirements are simple, and if the voter does not comply with them the election officials cannot count the ballot that he casts.

It appears from the record, that a short time before the date of the general election, on November 2, 1954, the appellant became an active candidate for the office of sheriff, and advertised his candidacy in the local newspapers, and by passing out cards throughout the county. His campaign was conducted along the lines of inducing voters to write his name on the ballots. He had printed three sets of cards, some of which bore his picture, with these words printed thereon:

No. 1.  "Your Vote and Influence
Earnestly Solicited
D. B. 'Beans' Judah, Jr.
For Sheriff Roosevelt County
Subject to Democratic Primary
May 4, 1954"
No. 2.     "Vote for
D. B. Judah, Jr.
Your write in Candidate
For Sheriff
Roosevelt County
General Election November **2**
(see over)

Democratic Ticket
For County Sheriff
Para Alguacil Mayor de Condado
P. F. Turner................. ☐
D. B. Judah, Jr................ ☒
Practice using sample below to
write in the name D. B. Judah,
Jr., and place a cross in the box.
For County Sheriff
P. F. Turner................. ☐
........................... ☐"

No. 3.        "Vote for
     D. B. Judah, Jr.      ☒
     Your write in Candidate
     For Sheriff
     Roosevelt County
General Election November 2"

In the local newspaper the following ad was printed:

"For County Sheriff
P. F. Turner ................ ☐
........................... ☐
Practice using sample here to
write in the name of D. B. Judah,
Jr., and place a cross in the box.
"For County Sheriff
Para alguacil Mayor de Condado
P. F. Turner ................... ☐
J. B. Judah, Jr. (written)........ ☒

D. B. Judah, Jr. Commonly called Beans Judah, was brought to Causey by his father *D. B. Judah* at the age of six * * *. His neighbors and friends who have organized the D. B. Judah, Jr., campaign committee for the purpose of securing the election of our friend and good citizen urge you to vote for D. B. Judah, Jr. by writing his *name* under the space designated 'For Sheriff' on the ballot and placing an X in the box at the end of his *name*." (Emphasis supplied.)

At and prior to said election there were living in Roosevelt County ten persons other than the appellant bearing the surname of *Judah,* all of whom were qualified registered electors of that county and qualified to hold the office of sheriff. One of said

persons was the father of appellant who was registered as David Bruce Judah.

The record discloses that ballots were cast at said election for the following persons: D. B. Judah, Jr., 1600; D. B. Judah, 151; J. B. Judah, Jr., 32; J. B. Judah, 27; Judah, 26; D. B. Juda, 16; J. D. Judah, Jr., 14; Beans Judah, 13; B. D. Judah, Jr., 11; Judah, Jr., 5; Beans Judah, Jr., 4; Juda, 4; B. J. Judah, 4.; J. D. Judah, 3; two votes each for the following: Beans Judith, Beans Juda, Bean Juda, B. Judah, Mr. Judah, D. J. Judah, Jr., B. B. Judah, B. B. Judah, Jr., B. F. Judah, D. D. Judah, Jr., B. D. Judah, and Juda, Beans, Jr.; also one each for D. B. Judha, Mrs. Beans Judah, Beans Judy, Mrs. Beans Juda, Beane Judah, D. B. Beans Judah, D. B. Juddy, D. B. Judy, Jr., D. B. Juda, Jr., Mr. Judah, Jr., Judy, Judda, Juda, Jr., Juda, Mr. Juda, Jr., J. D. Judah, O. B. Judah, Jr., J. B. Juda, Jr., J. B. Judda, Floyd F. Judah, Jr., J. B. Judy, Jr., Judith, Jr. Judah, Jr., B. J. Judy, B. J. Judha, B. F. Jaudah, Jr., D. D. Juda, F. Judah, Jr., E. D. Judah, Benny Juda, B. F. Judah, W. R. Judah, J. H. Judah, Jr., D. B. Judif, D. H. Juda, Jr., J. B. Judha, Jr., E. P. Judah, Jr., A. B. Judah, Jr., D. B. Judar, D. B. Judke.

The county canvassing board declared that appellant was entitled to all of the above votes and counted them for him. But the district court held otherwise and found that:

"3. The contestee D. B. Judah, Jr., is entitled to have counted for him in said election the following ballots in the following numbers:

| | |
|---|---:|
| D. B. Judah, Jr., Ballots to the number of | 1600 |
| Ballots having the names Beans Judah, or words of the same sound written thereon, either separately, or in conjunction with the name D. B. Judah, or D. B. Judah, Jr., to the number of | 30 |
| Ballots written D. B. Juda, Jr., to the number of | 1 |
| Ballot written D. B. Judy, Jr., to the number of | 1 |
| Ballots with the name written Judah, Jr., no christian name or initials, to the number of | 7 |
| Ballots having the name B. D. Judah, Jr., written thereon to the number of | 11 |
| Total | 1650 |

These being the only ballots which the court finds were cast in said election bearing the name of the contestee D. B. Judah, Jr., or Beans Judah, with sufficient certainty to show that they were cast for the contestee D. B. Judah, Jr., viewed in the light of the surrounding circumstances."

Appellant assigns thirty-nine errors which he argues under two points. Under point one he claims that:

"The trial court having sustained a motion made on behalf of appellee in the nature of a motion for judgment on the pleadings, all pertinent allegations made by appellant and all testimony tendered but not received by the court on behalf of appellant must be taken as true, and purported findings of fact to the contrary cannot be sustained."

This point purports to raise two separate and distinct questions: (1) The refusal of the court to hear the evidence tendered by the appellant on the issue covered by the findings; and (2) the sufficiency of the evidence to support the findings.

As to the first question the record discloses that the following transpired during the trial. At the conclusion of appellant's testimony the court said:

"Mr. Morgan, before proceeding further I would like to confer with counsel in chambers."

Upon resuming the trial the court said:

"Mr. Morgan, before going on with your testimony, since you have such a large number of witnesses, and if they were to all take the stand, we would consume a great deal of time. The court would like to know from you—

make a statement what you propose to prove by the witnesses you have had sworn.

"Mr. Jack Morgan: If it please the court, may I have about two minutes?

"The Court: Yes."

In response to this request appellant's counsel then stated to the court and into the record what he expected to prove by each of some sixteen witnesses, and at the conclusion of this tender, appellee's counsel moved for a judgment on the basis of the tender, and considering such evidence as might be admissible, as though it were in evidence. Then the court asked respective counsel if they would like to argue the motion.

"Mr. Reese: We'll be glad to, Your Honor. We are prepared to argue and present it.

"Mr. Jack Morgan: We're ready Your Honor.

"The Court: Proceed on your motion, Mr. Reese. (Reese makes argument on his motion)

"The Court: Mr. Morgan. (Jack Morgan makes argument for contestee)

"The Court: Anything further, Mr. Reese?

"Mr. Reese: Mr. Buzzard has a few remarks. (Mr. Buzzard closes argument for contestant's motion)"

At the conclusion of arguments by counsel the court sustained the motion and announced his decision from the bench. No objection was made by appellant's counsel that the trial court should not decide the case without hearing his witnesses detail the facts stated in the tender nor did he take an exception to the action of the court in proceeding to decision on the motion at the conclusion of the tender of proof.

Thus it appears that the trial court did not refuse to hear the evidence tendered by the appellant's counsel but considered the admissible parts as though the witnesses had testified and decided the case on all of the admissions and evidence offered by both parties.

As to the second question, suffice it to say that we have carefully examined the record and conclude that there is sufficient evidence to sustain the findings complained of and they will not be disturbed.

This case thus turns upon the question as to whether the ballots cast by the electors of Roosevelt county writing in the name of a person other than the candidate's name should be counted for him.

The principles applicable to judicial consideration of ballots in an election case has been recently stated by us in Telles v. Carter, 57 N.M. 704, 262 P.2d 985, 989. The court below, and this court on appeal, can correct any error of law appearing on the face of a ballot which has been made by election officials in counting a ballot for a candidate which is not a vote for that candidate. In the Telles v. Carter case twenty-seven ballots were counted and canvassed for appellee which were marked with a check mark instead of a cross as provided by statute. Mr. Justice Seymour speaking for the court said:

"* * * It is also true that, in cases involving such fundamental problems as the right to vote and the preservation of that right for all, each case must be *weighed very closely on its own specific facts* and on the specific sections of the applicable statutes.

"Finally, we can see no end to the problems that would be raised by an opposite conclusion. If a check mark is sufficient, why not any other mark which appeals to the individual voter. Those burdened with the task of tallying ballots would be faced, as each vote counted, with a judicial as well as a mathematical problem." (Emphasis ours.)

So in the case at bar if *D. B.* Judah is sufficient, why not any initial of the alphabet which appeals to the individual voter.

It was said in McCreery v. Burnsmier, 293 Ill. 43, 127 N.E. 171, 174:

"Where the ballots are actually and definitely marked for some person eligible to the office, living in the same district in which the candidates are to be elected, *although the person so voted for is not a candidate*, the intention of the voter must be determined by the ballot as cast, and not by extraneous evidence of the voter as to what his intentions were when he cast his vote. In other words, if a voter plainly marks his ballot for *John Jones*, who lives in the district wherein James Jones is a candidate for office, and *John Jones* is eligible to such office, the ballot cannot be counted for James Jones, although John Jones was not a candidate at that election, and the voter cannot be heard to say in such case that he intended to vote for James Jones. The rule is that, if the ballot is found to be perfect and expresses a certain intent by the elector it must be accepted as the exclusive evidence of his intent." (Citing cases.) (Emphasis ours.)

■ We conclude, that D. B. Judah and D. B. Judah, Jr., or D. B. "Beans" Judah, Jr., are different persons; likewise the Judahs with different initials. Votes cast for D. B. Judah and for all Judahs with different initials cannot be counted by the election officials for D. B. Judah, Jr., and the district court did not err in rejecting them. Telles v. Carter, supra; State ex rel. Cremer v. Steinborn, 92 Wis. 605, 66 N.W. 798; Murray v. Floyd, 216 Minn. 69, 11 N.W.2d 780; Keenan v. Briden, 45 R.I. 119, 119 A. 138; Sievers v. Hannah, 296 Ill. 593, 130 N.E. 361; O'Brien v. Board of Election Com'rs of City of Boston, 257 Mass. 332, 153 N.E. 553; Brown v. Carr, 130 W.Va. 455, 43 S.E.2d 401; State ex rel. Nuccio v. Williams, 97 Fla. 159, 120 So. 310.

■ Error is also assigned in the refusal of the court to make certain requested findings of fact. The refusal cannot be sustained as error since the findings made by the court are supported by substantial evidence.

Our decision set out above makes it unnecessary to discuss other points raised in the brief and argument of appellant.

Finding no error, the judgment reviewed will be affirmed.

It is so ordered.

SADLER and KIKER, JJ., concur.

McGHEE, J., dissents.

COMPTON, C. J., not participating.