**188 P.2d 337**

**SEELE v. SMITH.**

**No. 5046.**

Supreme Court of New Mexico.

Dec. 16, 1947.

George A. Shipley, of Alamogordo, for appellant.

Roy T. Mobley, of Alamogordo, and James T. Paulantis, of Albuquerque, for appellee.

COMPTON, Justice.

This is an election contest. The parties were opposing candidates for the office of Justice of the Peace, Precinct 19, Lincoln County, New Mexico, at the General Election held November 5, 1946. Contestant was the nominee on the Democratic ticket and contestee was the nominee on the Republican ticket. The returns, as certified by the election officials, show that contestant received 198 votes and that contestee received 201 votes. The County Canvassing Board issued its certificate certifying that contestee had been elected to the office.

The validity of the election is challenged by contestant. He alleged that he received

a majority of the legal votes cast. He also asserted that on account of irregularities of election officials in conducting the election, thereby causing a change in results, the election was a nullity and that it should be declared that contestant received a majority of the legal votes, consequently, entitled to the office.

Contestee, by answer, admitted that he was the holder of a certificate of election from the County Canvassing Board, certifying that he was the duly elected Justice of the Peace. He denied that contestant received a majority of the legal votes. He then pleaded affirmatively that all ballots cast at the election for Justice of the Peace were preserved, as required by law, and were available for a recount by contestant. Contestee also challenged the sufficiency of the notice of contest. At the conclusion of the hearing, the court made its findings of fact, except those we deem unnecessary to a decision, as follows:

"3. The contestant, George H. Seele, was the candidate of the Democratic Party for Justice of the Peace, and the contestee, Herbert Smith, was the candidate of the Republican Party for the said office.

"4. The following persons served as judges and clerks of the election:

"Election Judges
    "Republican—R. B. Halladay and Dewey Gann

"Democratic—I. N. Wingfield
"Counting Judges
    "Republican—Paul Mayer and Miss Emma Chase
    "Democratic—D. B. Morgan
"Poll Clerks
    "Republican—Mrs. Bertha Kirk
    "Democratic—Mr. Eric C. Bruce
"Counting Clerks
    "Republican—Mrs. Kiel Bonnell
    "Democratic—Mrs. Lillie May Ward

"6. When the counting judges and clerks had made a full and complete count of all of the local ballots they found therefrom that a majority of the said ballots had been cast for the contestant, George H. Seele.

"7. After the counting judges and clerks had made a full and complete count of all of the local ballots they found therefrom that the number of ballots cast for each of the candidates for the office of Justice of the Peace of the Precinct No. 19 were as follows:

"For the contestant, George H. Seele, 201 votes

"For the contestee, Herbert Smith 197 votes.

"10. While the counting judges and clerks were engaged in counting the remainder of the state ballots, one of the election judges R. B. Halladay, who was not a counting judge or clerk, acting in

the role of Superintendent or director of the polls, and assuming authority to do so, took possession of all of the local ballots lying loose and unbound upon a separate table, removed such ballots from the custody and control of the counting judges and clerks, carried the same to a separate table some distance from that being used by the counting judges and clerks, and there placed the said ballots in the hands of Dewey Gann, and caused the said ballots to be recounted by a committee named by him, the said R. B. Halladay, and composed of the following election officials: Dewey Gann, Mrs. Bertha Kirk, and Mr. Eric Bruce, none of whom were counting judges or clerks.

"11. At the conclusion of the recount of the local ballots the said R. B. Halladay announced the results thereof to be as follows:

"For the contestant, George H. Seele, 198 votes

"For the contestee, Herbert Smith, 201 votes.

"The said R. B. Halladay thereupon directed the counting judges and clerks to enter the totals of votes cast for Justice of the Peace of the said. Precinct No. 19, as found by the said recount, upon the Tally Books and the certificates thereto, as the correct totals of the votes cast for each of the candidates for the said office.

"12. The counting judges and clerks entered the totals of votes cast for each of the candidates for Justice of the Peace, as directed by the said R. B. Halladay, upon the Tally Books and certificates thereto, and made return thereof to the County Clerk, with the understanding and belief that the said R. B. Halladay was authorized to direct such action.

"13. The counting judges and clerks were not requested to make a recount of the local ballots by the said R. B. Halladay or any other person present in the counting room, and the said counting judges and clerks were not requested to approve the recount made by the committee of election judges and clerks, appointed by the said R. B. Halladay.

"16. Upon the basis of the recount as made by the committee of election judges and clerks as announced by R. B. Halladay, and not upon the count of the said ballots made by the counting judges and clerks, the contestee, Herbert Smith, was certified as having received a majority of the votes cast; and upon the basis of such certificate the Board of County Canvassers issued to the contestee Herbert Smith, a Certificate of Election on the 11th of November, 1946.

"19. There is no evidence of any error or irregularity in the count of the ballots for Justice of the Peace by the counting judges and clerks."

And then concluded as law:

"1. The count of local ballots was made by the counting judges and clerks, was full, complete and made in the manner provided by law.

"3. There was no irregularities or errors in the count of the local ballots made by the counting judges and clerks, which required a recount of the said ballots, and no such recount was necessary.

"6. The recount of local ballots by the committee of election judges and clerks was in violation of law, a nullity, and should not have been returned to the clerk of Lincoln County as the official count of the said ballots.

"8. The contestant received a majority of the votes cast for Justice of the Peace of Precinct No. 19, Lincoln County, New Mexico, at the general election held in and for the said precinct on the 5th day of November, 1946, and is entitled to the said office and to enter upon the duties thereof at the time and in the manner provided by law, for the term to which he was elected, with all of the privileges, power and emoluments belonging thereto."

Contestee assigns as error Findings of Fact numbered 6, 7, 9, 10, 11, 12, 16 and 19 and Conclusions 1, 3, 6, 7, 8, 9, which are presented and argued by him under four points.

The following map, Exhibit 2, the same being a photostat facsimile of the original tally sheet used at the election, graphically portrays and explains the evidence complained of:

Mere irregularities or error by election officials in the conduct of election or in the counting and certifying, which do not change the results, will not invalidate an election.

To conduct the election the following officials were selected: Election judges: R. B. Halladay and Dewey Gann, Sr., Republicans, and I. N. Wingfield, Democrat; election clerks (poll clerks): Mrs. Bertha Kirk, Republican and Eric C. Bruce, Democrat; counting judges: Paul Mayer and Emma Chase, Republicans, and D. B. Morgan, Democrat; counting clerks: Mrs. Kiel Bonnell, Republican and Mrs. Lillie May Ward, Democrat. The election judges and clerks commenced their duty at 9:00 a. m., and concluded at 6:00 p. m., or shortly thereafter. The counting judges and clerks commenced their duty at 11:00 a. m., and remained in continuous session until all ballots were counted and results certified, except for short intermissions, completing their duties about 8:30 p. m. The counting judges and clerks as ballots were delivered from the election room, first separated those for Justice of the Peace and Constable (known as local ballots) from those for state candidates, first counting the ballots for Justice of the Peace and Constable, then state ballots, continuing this method throughout the day. When the last ballots were being counted, the election judge, R. B. Halladay entered the counting room and made inquiry if all ballots for Justice of the Peace had been counted, as the vote was close. He was assured by the counting judges and clerks that all ballots were being correctly counted and there could be no mistake; whereupon he made examination of the ballots for state candidates and there found three or four ballots for Justice of the Peace and Constable which had not been counted. The counting judges continued until all ballots were counted, including those found by Halladay, and declared the results, by extending the totals for each candidate on tally sheets; Herbert Smith, receiving 39 and 158, George H. Seele receiving 55 and 146, respectively. The counting judges and clerks informed Halladay and other election officials that contestee had received 197 votes and contestant had received 201 votes. The counting judge, Paul Mayer, relying upon the results thus made and extended, signed the certificate of return (in blank) to be completed when the counting judges and clerks had completed their count for state candidates.

The counting judges then proceeded with their count of ballots for state offices, whereupon Halladay again returned to the counting room and stated that the election was too close, and he wanted to count them. He appointed a committee, other than counting judges and clerks, to make the recount.

In our examination of the record to determine if the judgment is supported by substantial evidence, the testimony of Emma Chase, Lilly May Ward and D. B. Morgan, was considered with that of other witnesses.

The witness Emma Chase, the Republican counting judge, in part, testified:

"Q. What did you do with the local ballots? A. We had just finished them when the election officials came in, and they took them and recounted them.

"Q. Did Mr. Halladay, or anyone, request you to recount them? A. No.

"Q. What was done with the local ballots, where were they placed? A. Mrs. Ward was calling them off, she would pick one up and call it off, Mr. Halladay picked it from the table.

"Q. You heard nothing said about their being any irregularity in the count which you had just made? A. No.

"Q. Do you recall whether or not you had completed counting all the ballots before Mr. Halladay picked them up and carried them to another place? A. Yes, *the first time he came in* I knew he complained because some of the local ones were mixed with the state ballots. We hadn't finished. He found some local ballots in the state ballots." (Emphasis ours.)

"Q. Did you count these ballots he found among the state ballots? A. Yes, we went through them very carefully.

"Q. That was prior to the time Mr. Halladay carried them to another table and had them recounted? A. Yes.

"Q. Did you participate in this recount? A. No.

"Q. Do you recall whether or not that recount was made by any of the counting judges and clerks? A. I don't believe so.

"Q. Do you recall who made the recount? A. As I recall, it was Mr. Gann, Mrs. Kirk and Mr. Halladay. I believe Mr. Bruce was there.

"Q. After this purported recount was completed were you asked whether the totals were satisfactory to you? A. We were rather told that they had counted them three times and that they were correct.

"Q. Do you recall who told you that? A. Mr. Halladay.

"Q. Did Mr. Halladay give you any instructions as to the totals? A. He said our totals were to be struck out and theirs put in because they were correct.

"Q. Where had you put your totals? A. On the tally sheet. *We just put the other one over it, or with it.*" (Emphasis ours.)

The witness Lillie May Ward, Democratic counting clerk, testified in part:

"Q. After you received the count of those ballots found among the state ballots, do you recall what the totals were for the two candidates for Justice of the Peace? A. The total?

"Q. Yes, how many votes did you find had been cast for Mr. Smith and how many for Mr. Seele? A. 201 for Mr. Seele and 198 for Mr. Smith.

"Q. I am speaking about the count made by you counting judges and clerks. A. 201 and 197.

"Q. Mr. Smith received the 197? A. Yes, sir.

"Q. What did Mr. Halladay do, if anything, with regard to having a recount made? A. He said he would appoint a committee.

"Q. Who were the members of the committee? A. Mr. Dewey Gann, Mr. Bruce and Mrs. Kirk."

Similar testimony was given by the witness D. B. Morgan. The evidence is undisputed that the recount was made by persons other than counting judges and clerks.

The question for our determination is whether the count, made by election officials, other than regular counting judges and counting clerks, changing the results was valid.

It is contended by contestee that all precinct officials, whether designated as receiving or counting judges and clerks are charged by law with the duty of tallying, counting and certifying the results. This contention under the provisions of subsection A(20) (Instructions to voters) Chapter 113, Laws of 1943, New Mexico Stat-utes, which reads: "When the count and tally of votes has been completed and entered upon the Tally Book, then all election officials (being judges and clerks of election, and also counting judges and counting clerks, if any) shall sign the certificate on the back cover of the Poll Book and also the certificate on the back cover of the Tally Book. When all certificates are signed, the judges of election shall mail to the Secretary of State at Santa Fe, one copy of all Poll Books and one copy of all Tally Books, and the other copies shall be delivered to the County Clerk as required in Instructions numbered 24 and 25."

And under subsection B(3) of the Act, page 235, which reads: "All judges and clerks of election, and also all counting judges and clerks, if any, must sign the certificate printed on the back cover of this Tally Book."

As an additional authority for this contention, he calls our attention to the provisions of the certificate required to be signed by all election officials appearing at page 235 of the Act, which reads:

"We, the undersigned, being all of the election officials for the election held on the——day of————A.D. 19——, in Precinct Number——, Election District Number——, County of————, New Mexico, do hereby certify as follows:

"(1) That the ballots used, in making the count of the votes cast for the respec-

tive candidates as hereinafter set out, were ballots Number 1 to Number——inclusive, all as shown in the accompanying Poll Book and our certificate thereon.

"(2) That we correctly counted and tallied the votes legally cast in said ballots for the respective candidates, and that the result of such count and tally is as follows: * * *."

As an aid to the construction of these provisions, we have only to consider Section 56-317, New Mexico Statutes, 1941 Comp., which provided for separate forms of oath to be subscribed by judges and clerks and counting judges and clerks. As amended by Section 1, Chap. 113, supra, it is provided that all election officials, instead of subscribing to an oath as theretofore required, shall sign the certificate upon the back of the poll books, and tally books, and by so doing, such election officials *shall be deemed* to have taken and subscribed to an oath that they will discharge and have discharged the duties of their respective office faithfully and impartially.

It is evident from a consideration of these provisions, that each group of election officials merely certifies that they have and will discharge the duties of their respective office faithfully and impartially. These provisions cannot be given the construction as contended.

Subsection A(19). ("Officials who shall count and tally ballots") Chapter 113, supra, specifically provides that in those precincts where counting judges and clerks have been appointed "only such counting judges and counting clerks shall count and tally the ballots and the votes cast for each candidate, and enter the same in the 'Tally Book.'"

We therefore conclude, that the count as made by the election judges and clerks was a nullity.

Contestee further contends that all ballots are yet available and that the court has inherent power to make a recount. Procedure for a recount was unknown to the common law; hence we must look to the statute, if any, for such authority. We know of no authority and none has been cited where, under the circumstances shown, the court possesses such power. The burden, by statute, is upon the party asserting this right. Contestant did not seek a recount and it was not incumbent upon him to assume this burden. 29 C.J.S., Elections, §§ 289, 291, (a) and (b), 295.

Contestee finally contends that the facts as alleged, are insufficient as grounds for an election contest. But it is contestant's claimed majority, adversely affected by the conduct of election officials that affords this ground. Section 5, art. 7, Constitution of New Mexico.

We have considered all assignments of error and find no merit in them. From a full consideration of the case, we conclude

that the judgment is supported by substantial evidence, and following the rule so frequently announced, it will not be disturbed.

The judgment will be affirmed, and it is so ordered.

LUJAN, J., concurs.

BRICE, C. J., did not participate.

SADLER, Justice (specially concurring).

One finding made by the trial court demands special comment. It is Finding No. 15 and reads: "15. Prior to the result of the so-called recount, no entries had been made by the regular counting officials of the tally made by them of the votes counted for Justice of the Peace in Precinct 19."

In making this finding the Court could not have intended that the regular counting officials did not carry forward on each of the two tally sheets used the totals of the votes tallied on each since such tally sheets were in evidence below and are certified up to us as original exhibits and a mere look at them discloses on each sheet the total vote there tallied for Justice of the Peace.

Furthermore, and notwithstanding a statement by the trial judge in course of the trial that the tally sheets showed no change, the photostatic copy of the sheet upon which the larger number of votes for Justice of the Peace were tallied plainly discloses that the results of the recount were superimposed over the totals for that sheet already entered there by the regular counting officials and the interim tallies then made to agree with such totals by additional changes that are apparent at a glance. It is significant that the trial judge did not carry forward into a finding his statement made during progress of the trial that the tally sheets showed no changes.

The trial court found that the result of the count made by the counting judges and clerks of all ballots cast in the race for Justice of the Peace in the precinct involved produced the result of 201 votes for contestant, Seele, and 197 votes for contestee, Herbert Smith. There is substantial evidence to support this finding and it fully supports the judgment rendered in favor of the contestant who is the appellee here. Const. art. 7, § 5. I concur in an order of affirmance.

McGHEE, Justice (specially concurring).

The contestant alleged, among other things, that he received a majority of the votes cast for the office of justice of the peace. Section 56-606, 1941 Code, provides that any material fact alleged in the notice of contest and not specifically denied by the answer within 20 days after service of the notice of contest shall be taken and considered as true. The answer of the contestee as to the matters of fact set up

in the notice of contest was a general denial. This admitted all matters of fact stated in the notice of contest and the answer could not thereafter be amended. Bull v. Southwick, 2 N.M. 321; Vigil v. Pradt, 5 N.M. 161, 20 P. 795; Garcia v. Lucero, 22 N.M. 598, 166 P. 1178; Wood v. Beals, 29 N.M. 88, 218 P. 354. The trial began after the time for amendment of the answer had expired. In my opinion the matters set out herein settle this case.

I concur in the affirmance of the judgment.