439 P.2d 919

**Nick ROMENESKO, Petitioner-Appellee,**

v.

**E. M. BARBER, Individually and as one of
the persons signing the original Recall Pe-
tition seeking a Recall Election for the pur-
pose of removing City Commissioner Nick
Romenesko from office, Intervenor-Appel-
lant.**

**No. 8501.**

Supreme Court of New Mexico.

April 22, 1968.

Zinn & Donnell, Santa Fe, for appellant.

Paul "Pablo" Marshall, Socorro, for ap-
pellee.

## OPINION

CARMODY, Justice.

This is an appeal by an intervenor from a
judgment, which, in effect, determined that
the attempted recall of a city commissioner
was unsuccessful.

Nick Romenesko, a commissioner for the
City of Truth or Consequences, was the
subject of the recall election and was the
petitioner seeking a recount. E. M. Bar-
ber, an attorney in Truth or Consequences,
signed the original recall petition preceding
the special election, was the intervenor in
the trial court, and is appellant here. Both

parties will be referred to by their surnames.

A summary of the material portions of the record, in the order of their filing, is necessary for an understanding of the proceedings:

1. Petition for recount;
2. Order appointing special master;
3. Motion by City to dismiss;
4. Report of special master;
5. Contest proceedings by Romenesko (a new and separate proceeding);
6. Order approving special master's report;
7. Motion by Romenesko for the court to determine legality of three ballots as to which the special master made no determination;
8. Order dismissing contest proceeding;
9. Order allowing Barber to intervene;
10. Final judgment declaring Romenesko not removed.

It is of interest that the outcome of the removal election was extremely close. 535 votes were required to remove Romenesko. In conformity with the referee's report, there were 537 votes favoring the recall, this determination apparently including the three controverted ballots which the special master certified to the court as not being determined. The trial court, in its final determination, found all three ballots to be void, with the result that there were only 534 votes in favor of removal, being one vote short of the requirement for such action.

■ Before considering Barber's challenge to the three controverted ballots, we will answer his attack on the proceedings generally. He first urges that the dismissal of the contest case must be considered as res judicata of the questions raised as to the invalid ballots. We cannot agree. See, Valdez v. Herrera, 1944, 48 N.M. 45, 145 P.2d 864. The recount proceeding was not, in its true sense, an adversary proceeding at all—there was no identity of the parties or issues between the two proceedings. Barber would have us construe the recount proceeding as, in effect, a contest but this would not be in conformity with the statute. Sec. 14–8–16, N.M.S.A.1953 (1967 Pocket Supp.), provides:

"14–8–16. Contests—District court jurisdiction—Preservation of returns—Recount—Action perpetually barred.—A. The district court shall entertain contests for any municipal office or on any question placed on the ballot and the procedure shall be the same as provided by law for contests of county officers, including the recount of ballots. No such suit or action shall be maintained unless it is instituted within thirty [30] days after the issuance by the municipal clerk of a certificate or notification of the results of the election.

"B. If the district court orders a recount, the district court shall determine if any fraudulent, illegal or void ballots have been counted. The district court may order such ballots to be thrown out and enter judgment accordingly in the recount proceedings.

"C. The ballots only shall be destroyed either:

(1) thirty [30] days after the issuance of the certificate of election; or

(2) if there is a contest of election, after the court has rendered judgment."

■ This statute was derived from § 14–14–5, N.M.S.A.1953, and subparagraphs A and B are substantially a re-enactment of the language of the old act, insofar as it related to contests and recounts. The former statute was considered by us in Hampton v. Priddy, 1945, 49 N.M. 1, 154 P.2d 839, wherein it was held that the statute vested in the district judge the judicial power to determine whether or not any fraudulent, illegal or void ballots had been counted. It plainly appears from that case that the court retains jurisdiction of a recount proceeding until the entry of a final judgment determining the legality of the ballots. In Hampton, it was held there could be no appeal until a final judgment was entered. Here the dismissal of the contest proceeding was with prejudice and on

a jurisdictional basis, but the validity or invalidity of the controverted ballots was, in no sense, determined. The issues as to these ballots remained to be determined in the case pending before the court, and the dismissal of the other action did not oust the court of jurisdiction. The case of Floersheim v. Bd. of Com's of Harding Co., 1922, 28 N.M. 330, 212 P. 451, relied upon by Barber, is not comparable on its facts and therefore not authority on this question.

It is next argued that Romenesko is barred from raising the question as to the controverted ballots, because his motion seeking to have the court consider the questions with respect thereto was not filed until some four months after the recall election. Barber claims, and properly so, that, in contest proceedings, amendments to the pleadings are not allowed after the statutory time for the filing of a contest. See, Ostic v. Stephens, 1951, 55 N.M. 497, 236 P.2d 727; and Wood v. Beals, 1923, 29 N.M. 88, 218 P. 354. However, this argument fails because this was not a contest proceeding and the cases dealing with contests relied upon by Barber are not in point.

As we read § 14–8–16 (B), supra, the jurisdiction of the court is retained pending the determination of illegal or void ballots. Cf., Hampton v. Priddy, supra. The existence of possibly void ballots should have been known by the trial court because of the special master's report. Thus Romenesko's motion merely alerted the court to the fact that there remained matters for determination in that case; the motion was in no sense an amendment to the pleadings.

Barber challenges the failure of Romenesko to join the City of Truth or Consequences as an indispensable party. In this connection, it seems to be claimed that this proceeding was a "contest" and of an adversary nature, thereby requiring the joining of the City as a party. What we have said heretofore should dispose of this argument—this was a recount, not a contest, under the provisions of the statute, and nothing further need be said.

We are thus brought to the question of the three contested ballots. These ballots were marked as follows: (1) within the square for recall, there was one line intersecting with two parallel lines; (2) a cross in the square for recall and a single line in the square against recall; (3) a cross in the square for recall and an erasure of a cross in the square against recall. In our opinion, all three of the ballots were spoiled ballots and the trial court was correct in disregarding them. The case is really controlled by Telles v. Carter, 1953, 57 N.M. 704, 262 P.2d 985. We there concluded that certain provisions of the statutes, which are now incorporated in §§ 3–3–12, 3–3–13 and 3–8–1, N.M.S.A.1953 (1967 Pocket Supp.), were mandatory and not directory. The court, in that case, faced with a choice of two theories, determined that, in the interest of public policy, secrecy of the ballot is more important than attempting to determine the intention of the voter when the two theories are in conflict. As a result of that conclusion, the court determined that ballots marked with a check mark, rather than a cross of two intersecting lines, should be rejected. The following from Telles makes manifest the reasoning of the court:

"Finally, we can see no end to the problems that would be raised by an opposite conclusion. If a check mark is sufficient why not any other mark which appeals to the individual voter. Those burdened with the task of tallying ballots would be faced, as each vote was counted, with a judicial as well as a mathematical problem. In addition, such a decision would destroy one section of our election law which is vital to the protection of the ballot, namely, Sec. 56–501, supra [§ 3–8–1, supra], enacted for the purpose of eliminating from the ballot any distinguishing marks through which the secrecy of the ballot would be lost."

Although in some respects the rule may seem harsh, nevertheless § 3–3–28, N.M.S.A.1953, enables the voter to obtain a new ballot, should he inadvertently spoil the one originally given him. See also §

**86**

3-3-12, INSTRUCTIONS TO VOTERS (8), N.M.S.A.1953 (1967 Pocket Supp.). It is suggested by Barber on this appeal that the marks on the three ballots, or any one of them, could have been placed there by some third person. There was no evidence submitted in this case in the trial court, nor was there any offer of proof, in an attempt to bear out the above contention; actually, it was not raised below in any sense, insofar as we are able to determine. We, of course, will not speculate on questions requiring the assumption of facts. See, Drink, Inc. v. Babcock, 1966, 77 N.M. 277, 421 P.2d 798; and Potter v. Wilson, 1958, 64 N.M. 211, 326 P.2d 1093. We are not concerned with claimed errors by election officials supported by the evidence, although if there were substantial proof of errors committed by election officials, we would not hesitate to apply a different rule with respect to spoiled ballots. See, Hicks v. Lucero, 1963, 72 N.M. 430, 384 P.2d 697; and Turner v. Judah, 1955, 59 N.M. 470, 286 P.2d 317.

The judgment of the trial court will be affirmed. It is so ordered.

NOBLE and COMPTON, JJ., concur.