688 P.2d 21

Donald **THOMPSON,**
**Petitioner-Contestee,**

v.

**Shannon ROBINSON,**
**Respondent-Contestant,**

**County Clerk of Bernalillo County, New Mexico, Intervenor.**

No. 15608.

Supreme Court of New Mexico.

Sept. 25, 1984.

Rehearing Denied Oct. 2, 1984.

William A. L'esperance, Albuquerque, for petitioner-contestee.

Shannon Robinson, Albuquerque, pro se.

Hunter Geer, Albuquerque, for intervenor.

## OPINION

WALTERS, Justice.

Contestee Donald Thompson has sought a writ of superintending control from this Court to prevent a judgment of the trial court, removing his name from the general election ballot as the Democratic candidate for state senator in District 17 and substituting therefor the name of Contestant Shannon Robinson, from being enforced.

Thompson alleges that the action brought below by Robinson was untimely and that the trial court's determination of Thompson's non-residency in the precinct and district where he sought election was erroneous. We affirm in part and reverse in part.

### Timeliness

Thompson argues that Robinson was required by NMSA 1978, Section 1-8-35 (Repl.Pamp.1984), to challenge Thompson's nominating petition within ten days after the last day for filing a declaration of candidacy, and that the district court was required to hear that challenge within ten days of filing the complaint. The complaint in this case was filed on June 21, 1984, 16 days after the primary election in which Thompson received the largest number of votes for the seat he sought as the Democratic nominee. Robinson received the second highest number of votes.

■ Thompson has overlooked NMSA 1978, Section 1-14-3, which permits an unsuccessful candidate to contest the election of a candidate not later than thirty days from the date the certificate of nomination is issued to the successful candidate. Thompson's certificate was issued on July 3, 1984. Robinson's election contest suit was filed well within the statutory time limit.

### Residency

NMSA 1978, Section 2-8B-4 (Repl.Pamp. 1983), requires that "[a]ny candidate for the office of state senator shall reside in the district for which he files his declaration of candidacy, at the time of such filing." According to Section 1-1-7.1 (Repl.

Pamp.1984), residence for the purpose of candidacy for an office to which the Election Code (§§ 1–1–1 through 1–8–64) applies is "that place in the precinct where the person is registered and eligible to cast a ballot." State Senate District 17 is an elective office within the scope of the Election Code. Section 1–1–19(A)(2). N.M. Const. art. VII, Subsection 2(A), provides that "[e]very citizen of the United States who is a legal resident of the state *and is a qualified elector therein*, shall be qualified to hold any elective public office * * *." (Emphasis added.) To be a qualified voter, or elector, in New Mexico, the voter must have resided "in the precinct in which he offers to vote" for thirty days immediately preceding the election. N.M. Const. art. VII, § 1.

■ These statutory and constitutional residency requirements are clear. The trial court found that although Thompson changed his voter registration to Precinct 323, which is in State Senate District 17, and he then voted in Precinct 323, Thompson was ineligible to so register and vote because he actually resided outside Precinct 323 and outside District 17. The trial court thus correctly concluded that Contestee Thompson was not "eligible to cast a ballot" in District 17 and that he did not reside in District 17 at any time necessary to meet the residency qualifications as outlined above. Therefore, Thompson was not a qualified elector eligible for the District 17 senate candidacy.

■ The trial court further concluded that Contestee Thompson intentionally concealed his actual residence at the time he filed his candidacy. The factual findings on which the trial court based these conclusions are clear and are supported by substantial evidence which we find unneccessary to further detail here. *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984).

The question of candidate eligibility is a continuing one. *Freund v. Hastie*, 13 Wash.App. 731, 537 P.2d 804 (1975). In *Freund*, the relevant Washington constitu-

tion and statutes allowed an election contest challenging candidate eligibility and, as in New Mexico, defined eligibility in terms of citizenship, elector status, and residency. *Id.* Although our Election Code does not expressly provide for a residency challenge in an election contest, the continuing crucial importance of eligibility and the inextricable link between eligibility and residency is demonstrated by the vacancy provisions of N.M. Const. art. IV, Section 3:

If any senator or representative permanently removes his residence from or maintains no residence *in the district from which he was elected*, then he shall be deemed to have resigned * * *. (Emphasis added.)

■ Therefore, we hold that Contestant's residency challenge is a proper election contest under NMSA 1978, Sections 1–14–1 and 1–14–3 (Repl.Pamp.1984). *Cf. Board of County Commissioners v. Chavez*, 41 N.M. 300, 67 P.2d 1007 (1937) (judicial right to order cancellation of election certification, although former election code did not specifically authorize such action, inherent in court's authority to order count of all votes cast). Section 1–14–1 provides for contest of "the election" of a candidate, and the eligibility of the candidate determines, in the first place, the validity of his election. *See also Weldon v. Sanders*, 99 N.M. 160, 655 P.2d 1004 (1982) (election contest is a much broader remedy than the recount and recheck remedies); *Osborn v. O'Barr*, 401 So.2d 773 (Ala.1981) (election declared void after action brought by third-place finisher resulted in holding that election winner was ineligible because of lack of residency). *Cf. Montoya v. Gurule*, 39 N.M. 42, 38 P.2d 1118 (1934) (election contest not available to challenge election of land grant trustees where code applied only to state, district and county offices).

Contestee's actions in creating a sham residence were nothing less than a deliberate attempt to evade the fundamental eligibility requirements expressly provided by our constitution and statutes. By deceiving voters regarding his actual place of residence, Thompson committed a fraud

upon the voting public and upon the entire electoral process.

■ The members of this Court are sworn to uphold the constitution and laws of New Mexico. In the absence of any claim by Contestee of lack of jurisdiction other than his overruled claim that the contest to his candidacy had to be made under Section 1–8–35, and whether our decision be considered an exercise of our constitutionally authorized superintending control, N.M. Const. art. VI, § 3, or a decision on expedited appeal, Section 1–14–5; NMSA 1978, Civ.App.R. 32 (Repl.Pamp. 1984), we will not avoid our duty to prevent a fraud which goes to the heart of the electoral process. Were we to do so, we would allow the name of an ineligible candidate to remain on the ballot, thereby encouraging such deceitful practices and permitting a mockery to be made of our basic constitutional and statutory election requirements. The very purpose of the Election Code is to secure "purity of elections." NMSA 1978, Section 1–1–1.1. Whatever label be attached to these proceedings, it will not be permitted to interfere with a meritorious challenge to Thompson's clear ineligibility to remain on the ballot as the duly certified Democratic nominee in the general election for State Senate District 17. See *Orchard v. Board of Commissioners of Sierra County*, 42 N.M. 172, 76 P.2d 41 (1938), which discusses the court's powers to relieve against elections when they are tainted by fraud.

Section 1–8–8, which is within the article of the Election Code pertaining to "Nominations and Primary Elections," provides that if a vacancy occurs *for any cause* in the list of nominees, following a primary election for any legislative office within a single county district to be filled in the general election, the central committee of the county political party shall fill the vacancy by appointment. Subsection B further provides that such appointments must be made at least 56 days before the general election unless the vacancy is caused by death, and appointments may then be made up until 5 days before the general election.

The time limitation applicable to this case, 56 days, is impossible of performance. It is otherwise an impractical limitation, as well. Article 14, dealing with election contests, allows 30 days after issuance of the certificate of nomination for filing the contest complaint, and then provides for application of the rules of civil procedure to the action. § 1–14–3. Those steps alone contemplate a total of 60 days after the certificate is issued before the issue is joined. Section 1–14–5 then provides for an appeal to the Supreme Court under the civil appellate rules, once discovery had been completed, any preliminary motions or matters have been disposed of, and the case has gone to trial and been decided in the district court—another 30 days for docketing the appeal and 60 days to complete briefing, when the rules of civil procedure and appeal have been followed. If the case were tried in district court on the day contestee's answer was filed—a most unlikely and probably unconstitutional happenstance (*see* N.M. Const. art. II, § 18)—the contest procedure established by the legislature would consume a minimum of 150 days before it ever became ripe for decision in this Court. The 56-day period within which the judically-declared vacancy had to be filled by the county central committee could rarely, if ever, be met, and an election contest in most instances would be of little purpose were the 56-day limitation to be observed, i.e., the vacancy would remain unfilled.

To partially overcome the inconsistencies of the time allowances on one hand and the constraints for filling vacancies on the other, this Court adopted Rule 32 of the rules of civil appellate procedure, requiring notice of appeal from the district court judgment within 5 days thereafter, and providing for a hearing and decision at the earliest possible date after the appeal is docketed. Even so, the expedited appeal procedure operates to shorten the time consumed only after the case has been decided in district court. The reality of the 56-day limitation, in this case, is to allow a total of only 70 days from the date of filing the

contest complaint in district court to decision by this Court on appeal.

■ We therefore hold that the 56-day restriction placed upon political central committees by Section 1–8–8 is inconsistent with the panoply of contest rights provided in Article 14 of the Election Code; and because its enforcement would result in unjust, absurd or unreasonable consequences, it cannot stand. *See City Commission of Albuquerque v. State*, 75 N.M. 438, 405 P.2d 924 (1965).

The judgment of the trial declaring Thompson ineligible for nomination as the Democratic candidate in State Senate District 17 is affirmed. The award of the nomination to Contestant Robinson is reversed. Because of the immediate necessity to print absentee ballots showing the name of the candidate selected by the county central committee to fill the vacancy created by Thompson's ineligibility, the committee is urged to meet, select, and file the name of its nominee with the proper filing officer forthwith. § 1–8–8(A)(2).

**IT IS SO ORDERED.**

FEDERICI, C.J., SOSA, Senior Justice, and RIORDAN and STOWERS, JJ., concur.